## Anthony J. Gibbons et al. v. Walter Vanderhoogt, by His Next Friend.

1. PRACTICE—*Court Will Not Modify a Former Conclusion upon Testimony of Witnesses Which is Irreconcilably Inconsistent With What They Before Testified to.*—Where, on a second trial of a case, the testimony of the witnesses is irreconcilably inconsistent with what they before testified to, and if disregarded there is no evidence in the case upon which to sustain a different conclusion, this court will not modify its former decision.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge presiding. Heard in the Branch Appellate Court at the March term, 1902. Reversed, with a finding of facts. Opinion filed April 14, 1903.

CHARLES L. MAHONY, attorney for appellants.

THEODORE G. CASE and JOHN T. MURRAY, attorneys for appellee; A. W. BROWNE, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court. The facts in this case are sufficiently stated in the

opinion of the court in Gibbons v. Vanderhoogt, 75 Ill.
App. 107.   It was then held that the question as to con-
tributory negligence was properly submitted to the jury,
and it was said "to be undisputed that the accident was
caused by the sudden backing up of the Reid, Murdoch &
Company's wagon, with which appellants had no causal
connection whatever." It further appears from that
opinion that the only attempt to fix any negligence upon
the appellants at the former .trial was " by the testimony
of Coleman and Meyers."   The witness erroneously called
Coleman, appears in the present record under the name of
John Kolmar.   So far as the testimony in the present case
is substantially the same as that which was given at the
former trial, the former decision rendered in the same case
upon the same facts must be deemed conclusive and bind-
ing.   If it be true, as stated in that opinion, that the uncon-
tradicted evidence at the former trial was that the precise
and proximate cause of the injury to appellee was that the
wagon in front, upon which appellee was riding, " was sud-
denly backed up against appellants' team," the question is
whether, in the record now before us, there is credible
evidence tending to prove that the backing of the front
wagon was not the proximate cause of the injury, but that
it was in fact due to the negligence of appellant.

The evidence which is now relied upon to sustain the
charge of negligence against appellant is substantially the
same as upon the. former trial.   It is to the effect that
appellants' driver sat as if he was paying no attention to
what was in front of him, holding the lines loosely in his
hands.   But appellee's witnesses now add statements not
included in their former testimony.   The witness Kolmar
says:   "It is not a fact that the Reid, Murdoch & Fischer
wagon was stopped by a horse driving along on Clark
street in front of it."

On cross-examination, however, he modifies this state-
ment, as follows:

"Q.   Now, will you swear that the Reid-Murdoch wagon
did not back up?   A.   Why, that would be almost an

impossibility for me to swear to. The horses might have flinched; when a man stops so suddenly, the horses might have turned sideways.

The Court: Well, do you remember whether it did or did not back up? A. It did not back up, not with the driver's consent.

The Court: No, no; the question is, do you know whether it did back up or not—the Reid-Murdoch wagon?

Answer: Oh! Will I answer the gentleman or Your Honor?

Mr. Case: The court.

Answer: Your Honor, the line stopped so suddenly—

The Court: If you can't tell, why that is the end of it.

Mr. Case: Q. Just say whether the wagon backed up or not.

Answer: It did not back up, not to my knowledge.

Mr. Mahony: Will you swear positively that that wagon—?

The Court: You need not answer that. The court then remarked, ' That is all that a man can swear to, that a thing did not happen so far as he knew anything about it.'"

Another witness, a young man named Meyers, who also testified at the former trial in behalf of appellee, states that the driver of appellants' wagon was looking north just before the accident occurred. With reference to the backing up of the Reid-Murdoch wagon he now testifies as follows: " Q. Now, did the Reid, Murdoch & Fischer wagon, after the line came to a stop there—did that wagon back into the Standard Oil wagon? A. No, sir; not at my recollection. I am only testifying from what I saw. There was nothing between me and that wagon to prevent my seeing him. It did not back." This testimony apparently tends to show only that the Reid, Murdoch & Fischer wagon did not back after the line had stopped, and there is no contention, so far as we can see, that it did. The testimony of its driver is that it backed up before the line came to a stop. The witness stated on cross-examination, however, that the " Reid, Murdoch & Fischer wagon did not stop at all, and while it was going along with this boy on it, the Standard Oil wagon ran into it." This is the third time this witness has been examined in the case, and he

has twice contradicted his original statements. On the former trial he swore positively that the Reid-Murdoch wagon backed up into appellants' wagon.

The only other witness whose testimony bears upon this point is that of appellee himself. He was asked on cross-examination, referring to the former trial: "Q. Do you remember being asked this question: ' Do you know whether the wagon which you were on backed up or not?' and didn't you answer, ' No, sir; I do not?' A. Well, I was tangled up and did not know what I said. I think I made that answer to that question." He testifies that he was also asked the question, "You could not say whether it did or not, can you?" and that he made an answer, "No, sir." Notwithstanding his evidence thus given on the first trial and which he states that he had read over, he now says that the wagon " did not back up, I am quite certain."

This is the evidence now relied upon by appellee's attorneys to contradict the positive testimony of the driver of the Reid, Murdoch & Fischer wagon, given at the former trial and repeated in this record, wherein he stated that appellee was riding on his wagon without permission; that he, the witness, was driving a blind horse; that when he reached Clark street a buggy drove in front of his team, hitting his horse on the side of the head; that the horse immediately backed up six or seven feet before he could stop him and that as his horse was backing the boy "hollered." The driver's testimony is explicit to the effect that the injury to appellee was inflicted because the wagon of the witness was thus backed up against the pole of appellants' wagon; that pole slid over the Reid, Murdoch & Fischer wagon, indicating, apparently, that appellants' horses were holding back sufficiently to elevate the pole so that it slid over and into, instead of under, the Reid, Murdoch & Fischer wagon, striking appellee upon and breaking his leg. The driver is corroborated in this by what we regard as preponderating evidence.

The only question before us for consideration is whether or not the testimony given by appellee's witnesses referred

to was sufficient to warrant the jury in finding, as they seem to have done, that the accident was not caused by the backing up of the Reid, Murdoch & Fischer wagon, but was caused by the negligence of appellants' driver. It was held on the former trial that there was "a decided preponderance of the evidence to the effect that appellants' driver was attending to his team and that no act or omission by him had aught to do with the accident, and there is not a hint in the evidence that if he was not attending to his team, but looking to the north, a different course of conduct could possibly have prevented a frightened horse from backing upon him, or that he could have in any way escaped the collision." There is no additional evidence tending to show negligence on the part of appellant materially differing from that given at the former trial. The only ground upon which the present verdict could be sustained, in view of the former ruling, would be that there is testimony in the present record tending to show that the accident was not caused by the backing of the Reid, Murdoch & Fischer wagon. The testimony of the witness Kolmar is not positive, and is not entitled to much weight as bearing upon that question. The testimony of the other witnesses is irreconcilably inconsistent with what they before testified to. It is certainly very singular if they were aware of the alleged fact that the accident was not caused by the backing up of the Reid, Murdoch & Fischer wagon, they did not so testify then. The issues were precisely those now presented. It is claimed by appellant that having been advised by the former opinion of this court that in order to make out a case for appellee, it would be necessary to contradict the testimony of the driver of the Reid-Murdoch wagon and others and swear that the wagon did not back up, as the driver said it did, appellee's witnesses have endeavored to shape their testimony accordingly. It is evident that they have contradicted themselves. This fact tends to deprive their testimony of the weight to which otherwise it might be entitled. No court would be justified in modifying a former conclusion upon evidence so

'thoroughly discredited by the witnesses themselves. If this testimony is to be so disregarded, as in our judgment it must be, then there is no evidence in the present case upon which to sustain the verdict in favor of appellee. The other questions were disposed of by the former opinion and judgment upon substantially the same evidence now before us. We are precluded by that decision as to those matters.

The judgment of the Superior Court must be reversed, with a finding of facts.